| | |
|---|---|
| 1 | Brian D. Myers (No. 017396)<br>E-mail: BDM@JHC.Law |
| 2 | **JENNINGS, HAUG & CUNNINGHAM, L.L.P.**<br>2800 North Central Avenue, Suite 1800 |
| 3 | Phoenix, AZ 85004-1049<br>Telephone: 602-234-7800 |
| 4 | Facsimile: 602-277-5595 |
| 5 | Attorneys for Creditor<br>Premier Financial Services, LLC |
| 6 | |

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 Proceeding |
| JEFFREY D. MOYER and ROXY L. MOYER, | Case No.: 2:18-bk-11979-PS |
| Debtors. | |
| PREMIER FINANCIAL SERVICES, LLC, a Connecticut limited liability company, | Adv. Case No.:<br>**COMPLAINT UNDER 11 U.S.C. § 523 TO DETERMINE NON-DISCHARGEABILITY OF DEBT** |
| Plaintiff, | |
| v. | |
| JEFFREY D. MOYER and ROXY L. MOYER, | |
| Defendants. | |

Plaintiff Premier Financial Services, LLC, a Connecticut limited liability company ("PFS"), by and through its counsel undersigned, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. PFS is a Connecticut limited liability company duly authorized and licensed to conduct business in the State of Arizona.

. . .

. . .

2. On October 1, 2018, Defendants Jeffrey D. Moyer and Roxy L. Moyer (collectively the "Moyers") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Venue is proper in the United States Bankruptcy Court for the District of Arizona pursuant to 28 U.S.C. § 1409(a). The Complaint is timely pursuant to Rule 4004, Federal Rules of Bankruptcy Procedure.

## ALLEGATIONS COMMON TO ALL COUNTS

5. On or about March 17, 2017, Defendant Jeffrey D. Moyer executed and delivered to PFS a certain Lease Credit Application containing information upon which PFS relied upon in making its decisions regarding providing an Open End Motor Vehicle Lease Agreement. *A true and correct copy of the Lease Credit Application is attached hereto as Exhibit "1" and incorporated herein by this reference.*

6. Under the section of the Lease Credit Application entitled "Employment", Defendant Jeffrey D. Moyer represented that he held the position of Executive VP of GoCare Warranty Group, Inc., and had an annual income at that time of $492,520.00. *See Exhibit 1.*

7. In addition, Mr. Moyer presented PFS with a copy of what he alleged to be the Moyers' Form 1040 Federal Tax Return for 2016 which was signed on February 13, 2017. This document reflected that the Moyers' income in 2016 was $492,525.00.

8. On or about March 17, 2017, Defendant Jeffrey D. Moyer executed and delivered to PFS a certain Open End Motor Vehicle Lease Agreement (the "Lease Agreement") whereby PFS leased a certain 2010 Ferrari 458 Italia (the

1 "Leased Vehicle"), with an agreed value of One Hundred Sixty-Two Thousand Nine Hundred Ninety Dollars ($162,990.00), to Defendants. *A true and correct copy of the Lease Agreement is attached hereto as Exhibit "2" and incorporated herein by this reference.*

9. Pursuant to paragraph no. 25(e) of the Lease Agreement, the Moyers were prohibited from subleasing or lending the Leased Vehicle. *See Exhibit 2, ¶ 25(e).*

10. Upon information and belief, the Moyers subleased or lent the Leased Vehicle to Skyline Dream Cars, LLC, d.b.a. Skyline Exotic Car Rental of Phoenix, which then rented the Leased Vehicle to third parties on a daily rental basis.

11. Pursuant to the terms of the Lease Agreement, the Moyers made an initial payment of Eight Thousand Six Hundred Thirty-Four and 15/100 Dollars ($8,634.15) due at the signing of the Lease Agreement and then were obligated to make fifty-eight (58) monthly lease payments in the amount of Two Thousand Two Hundred Sixty-One and 64/100 Dollars ($2,261.64). *See Exhibit 2.*

12. The Moyers defaulted on the Lease Agreement and PFS recovered possession of the Leased Vehicle. The Leased Vehicle was eventually sold in the amount of One Hundred Forty Thousand Dollars ($140,000.00), but still resulted in a deficiency balance owed by Defendants on the Lease Agreement in the amount of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70). *A true and correct copy of the Deficiency Balance Explanation is attached hereto as Exhibit "3" and incorporated herein by this reference.*

. . .

. . .

. . .

13. On or about October 20, 2017, PFS made a written demand upon Defendants for payment of the deficiency balance on the Lease Agreement in the amount of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), to no avail.

14. As a result of the default under the Lease Agreement, PFS initiated a lawsuit in the Superior Court of Maricopa County seeking sums owed under the Lease Agreement of no less than Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), plus interest, attorneys' fees and costs.

15. On May 18, 2018, PFS obtained a Default Judgment against the Moyers for the principal sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), plus interest at eighteen percent (18%) per annum from October 20, 2017, until paid; attorneys' fees in the amount of Three Thousand Fifty-Five Dollars ($3,055.00); and taxable costs in the amount of Five Hundred Six and 40/100 Dollars ($506.40).

## COUNT ONE

### (Violation of 11 U.S.C. § 523(a)(2))

16. PFS incorporates by reference all of the allegations contained above as though fully set forth herein.

17. The Moyers obtained an extension of credit from PFS based on false pretenses, false representations, and actual fraud, all in violation of 11 U.S.C. § 523(a)(2)(A).

18. The Moyers obtained an extension of credit from PFS based on statement in writing, i.e. the Lease Credit Application, that was materially false respecting the Moyers' financial condition on which PFS reasonably relied and

1 the Moyers submitted to PFS intending to deceive it in violation of 11 U.S.C. § 523(a)(2)(B).

19. The Moyers misrepresented their income at the time of their submission of the Lease Credit Application. Specifically, Mr. Moyer was not making anywhere near $492,525.00 from GoCare Warranty Group, Inc.

20. The Moyers' Statement of Financial Affairs filed with this Court asserts that their income was $266,028.00 in 2016 and $42,895.00 in 2017.

21. Upon information and belief, GoCare Warranty Group, Inc., was insolvent at the time of the Moyers' submission of the Lease Credit Application. Among other things, it was in default on a loan owed to CIT Bank in excess of $150,000.00.

22. The Moyers represented to PFS that the Leased Vehicle would be used for personal use only. Instead, the Leased Vehicle was subleased or lent to a rental car company owned by the Moyers for rentals to third parties.

23. As a direct and proximate result of the Moyers' fraudulent conduct, PFS has suffered damages in the total principal sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), the exact sum to be proven at trial.

24. PFS is entitled to its reasonable attorneys' fees and costs incurred and expended herein together with interest accruing at the highest statutory rate from the date of default, i.e. October 20, 2017, until paid.

**WHEREFORE**, PFS prays for Judgment against Defendants Jeffrey D. Moyer and Roxy L. Moyer, as follows:

A. That the Court decree that the Moyers are indebted to PFS and that such indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and/or (B);

B. For judgment in favor of PFS in the total sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), together with interest and taxable costs;

C. That the Court award PFS its reasonable attorneys' fees and costs; and,

D. For such other and further relief as this Court deems just and proper.

## COUNT TWO

**(Violation of 11 U.S.C. § 523(a)(4))**

25. PFS incorporates by reference all of the allegations contained above as though fully set forth herein.

26. The Moyers are indebted to PFS based on their fraud and/or defalcation upon PFS and its property while acting in a fiduciary capacity to PFS in violation of 11 U.S.C. § 523(a)(4).

27. The Moyers are indebted to PFS based on their embezzlement and larceny in violation of 11 U.S.C. § 523(a)(4).

28. As a direct and proximate result of the Moyers' conduct, PFS has suffered damages in the total sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), the exact sum to be proven at trial.

29. PFS is entitled to its reasonable attorneys' fees and costs incurred and expended herein together with interest accruing at the highest statutory rate from the date of default, i.e. October 20, 2017, until paid.

**WHEREFORE**, PFS prays for Judgment against Defendants Jeffrey D. Moyer and Roxy L. Moyer, as follows:

A. That the Court decree that the Moyers are indebted to PFS and that such indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

B. For judgment in favor of PFS in the total sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), together with interest and taxable costs;

C. That the Court award PFS its reasonable attorneys' fees and costs; and,

D. For such other and further relief as this Court deems just and proper.

## COUNT THREE

## (Violation of 11 U.S.C. § 523(a)(6))

30. PFS incorporates by reference all of the allegations contained above as though fully set forth herein.

31. The Moyers are indebted to PFS as a result of their willful and malicious injury to PFS and its property pursuant to 11 U.S.C. § 523(a)(6).

32. As a direct and proximate result of the Moyers' conduct, PFS has suffered damages in the total sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), the exact sum to be proven at trial.

33. PFS is entitled to its reasonable attorneys' fees and costs incurred and expended herein together with interest accruing at the highest statutory rate from the date of default, i.e. October 20, 2017, until paid.

**WHEREFORE**, PFS prays for Judgment against Defendants Jeffrey D. Moyer and Roxy L. Moyer, as follows:

A. That the Court decree that the Moyers are indebted to PFS and that such indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

B. For judgment in favor of PFS in the total sum of Fifty-Six Thousand One Hundred Ninety-Nine and 70/100 Dollars ($56,199.70), together with interest and taxable costs;

C. That the Court award PFS its reasonable attorneys' fees and costs; and,

D. For such other and further relief as this Court deems just and proper.

**DATED** this 4th day of January, 2019.

**JENNINGS, HAUG & CUNNINGHAM, L.L.P.**

*/s/ Brian D. Myers* (#017396)
Brian D. Myers
Attorneys for Premier Financial Services, LLC

EXHIBIT 1

DocuSign Envelope ID: 0982DF06-8270-47D4-( 45DB3656ECBB

THIS IS A COPY
This is a copy view of the Authorative Copy held
by the designated custodian



**Premier** Financial Services
*Vintage and Exotic Motorcar Leasing*

47 Sherman Hill Road
Woodbury, CT 06798
Tel 203 267.7700
Fax 203 267.7773
premierfinancialservices.com

# LEASE CREDIT APPLICATION

## INDIVIDUAL

Full Name **Jeffrey Douglas Moyer**
Address **3160 E. Wildhorse Ct.**
City, State & ZIP **Gilbert AZ          85297**
Phone _____
Fax _____
Cell **480-704-3860** Email **jemoyer@gmail.com**
Date of Birth [REDACTED] SS No. [REDACTED]
*U.S. Citizen _____ Other **US** *Required
Own or Rent **Own** Number of Years **3**
Previous address (If less than 2 years at current)
_____

Mortgage Holder or Landlord _____
Payment per month **$3,360**
Name of bank (Personal banking) _____

### INSURANCE COMPANY
Insurance Co./Agency _____
Policy No. _____
Phone _____ Fax _____

### EMPLOYMENT
**Gocare Warranty Group Inc** Years **6**
Address **3240 N. Colorado St Suite 1**
City, State & ZIP **Chandler AZ 85225**
Phone **480-704-3860**
Position **Executive VP of** Verifiable Income **$492,525**
Previous Employer (If less than 2 years at current)
_____
Address _____
Additional Income _____
Sources _____

## BUSINESS

Business Name _____
Address _____
City, State & ZIP _____
Phone _____
Fax _____
Cell _____ Email _____
Type of Business _____
Years in Business _____ Fed Tax ID _____
Officer Signing for Company _____
Title _____

### BUSINESS BANKING
Name of Bank _____
Branch Location _____
Account No. _____
Officer _____
Phone _____

### VEHICLE
Year **2010** Make **Ferrari** Model **458 Italia**
_____ Color _____ Style **Coup** Mileage **25600**
Selling Price **$162,990.00**
Down Payment **$0.00**
Finance Amount **$162,990.00**
Term **60** @ $ _____
Purchase Option **$70,000.00**

*The above information is correct to the best of my knowledge. Premier Financial Services, LLC (Premier) will rely on this application in deciding whether to grant the requested credit and may keep this application on file. I authorize Premier to review my credit and employment history, transfer information to Premier affiliates, and, if approved, obtain future credit reports as necessary. Premier will safeguard my information and will use it for internal purposes only. I understand that federal law requires financial institutions to obtain, verify, and record identifying information.*

Signature: *Jeffrey Douglas Moyer* (DocuSigned by, F47D53458F6A439)
Date **3/17/2017**

EXHIBIT 2

DocuSign Envelope ID: 0982DF06-8270-47D4-8B94-45DB3656ECBB

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# OPEN END MOTOR VEHICLE LEASE AGREEMENT

THIS LEASE AGREEMENT is entered into 03-16-2017 between PREMIER FINANCIAL SERVICES, LLC ("Lessor") whose address is 47 Sherman Hill Road, Woodbury, CT 06798, and whose phone number is (203) 267-7700 and Jeffrey Douglas Moyer ("Lessee") whose address is 3160 E. Wildhorse Ct., Gilbert, AZ 85297 and covers the lease of the vehicle described below. As used in this lease the words "you", "yours" or "your" refer to the lessee and "we", "our" or "us" refer to the lessor.

## 1. DESCRIPTION OF LEASED VEHICLE

| YEAR | MAKE | MODEL | | BODY STYLE | COLOR | NEW/USED | VEHICLE ID NUMBER |
|---|---|---|---|---|---|---|---|
| 2010 | Ferrari | 458 Italia | | Coupe | Red | Used | ZFF67NFA8A0175523 |

| PRIOR USE OF VEHICLE | PRIOR WRECKAGE | MILEAGE | CYL. | TRANS. | P. BRAKES | P. STEERING | A.C. | MSRP. |
|---|---|---|---|---|---|---|---|---|
| Personal | No | 25719 | 8 | Automatic | Yes | Yes | Yes | Not Available |

## 2. TRADE INFORMATION:

| | YEAR | MAKE | MODEL | VIN |
|---|---|---|---|---|
| | NA | NA | NA | NA |

$0.00 Agreed Value (before debt) - $0.00 prior credit or lease balance = $0.00 Net Trade-In Value

### GAP LIABILITY NOTICE
In the event of theft or damage to the vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount or a GAP Waiver may be offered for an additional price.

### THERE IS NO COOLING OFF PERIOD
The law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

## 3. DISCLOSURES

| 3.a. Amount Due at Lease Signing or Delivery: (Itemized below)** $8,634.15 | 3.b. Monthly Payments: Your first monthly lease payment of $4,523.29 is due on 3/18/2017 followed by 58 payments of $2,261.64 due on the 18th of each month. The total of your monthly payments is $135,698.64**† | 3.c. Other Charges: (not part of your monthly lease payment) Off Lease Fee $495.00<br><br>Total $495.00 | 3.d. Total of Payments: (the amount you will have paid by the end of the lease) $140,304.50 † You will owe an additional amount if the actual value of the vehicle is less than the residual value. |
|---|---|---|---|

### Itemization of Amount Due at Lease Signing or Delivery

| 3.e.**Amount Due at Lease Signing or Delivery: | | 3.f. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| i. Capitalized Cost Reduction | $0.00 | i. Net Trade in Allowance | |
| ii. Tax on Capitalized Cost Reduction | $0.00 | ii. Rebates and Noncash Credits | $0.00 |
| iii. First Monthly Lease Payment (includes sales tax) | $4,523.29 | iii. Amount to be Paid in Cash | $8,634.15 |
| iv. Title, Registration and License Fees | $2,958.25 | | |
| v. Refundable Security Deposit | $0.00 | Total: | $8,634.15 |
| vi. Document Processing Charge (not a governmental fee) | $80.00 | | |
| vii. Acquisition Fee (includes sales tax) | $1,072.61 | | |
| viii. Supplemental Title Fee | $0.00 | | |
| ix. Other (specify) | | | |
| Total: | $8,634.15 | | |

### 3.g. Your Monthly Lease Payment is Determined as Shown Below:

| i. Gross Capitalized Cost - The agreed upon value of the vehicle ($162,990.00) and any items you pay over the lease term (such as taxes, fees, mechanical breakdown protection contract, insurance, service contracts and any outstanding prior credit or lease balance, all of which is itemized in section 4). | $162,990.00 |
|---|---|
| ii. Capitalized Cost Reduction - The amount of any rebate, cash payment, net trade-in allowance or noncash credit you pay that reduces the gross capitalized cost. | $0.00 |
| iii. Adjusted Capitalized Cost - The amount used in calculating your base monthly payment. | =$162,990.00 |
| iv. Residual Value - The value of the vehicle at the end of the lease used in calculating your base monthly payment. | -$80,000.00 |
| v. Depreciation and Any Amortized Amounts - The amount charged for the vehicle decline in value through normal use and for any other items paid over the lease term. | =$82,990.00 |
| vi. Rent Charge - The amount charged in addition to the depreciation and any amortized amounts. | +$42,890.00 |
| vii. Total of Base Monthly Lease Payments - The depreciation and any amortized amounts plus the rent charge. | =$125,880.00 |
| viii. Lease Payments - The number of payments in your lease. | 60 |
| ix. Base Monthly Payment: - 1st month @ $4,196.00 + 58 Monthly Payments @ | =$2,098.00 |
| x. Monthly Sales Tax | +$163.64 |
| xi. Total Monthly Lease Payment | =$2,261.64 |
| Rent and other Charges - The total amount of rent and other charges imposed in connection with your lease. | $57,314.50 |

**3.h. Early Termination.** You may have to pay a substantial charge if you end this lease early. The amount may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater the charge is likely to be.

**3.i. Excessive Wear and Use.** YOU MAY BE CHARGED FOR EXCESSIVE WEAR BASED ON OUR STANDARDS FOR NORMAL USE (SEE SECTION 14 BELOW) AND FOR MILEAGE IN EXCESS OF 3,500 MILES PER YEAR AT THE RATE OF $1.50 PER MILE. IF YOU ELECT TO PURCHASE THE VEHICLE AT THE END OF THE LEASE AND PAY THE AGREED UPON "RESIDUAL VALUE", YOU WILL NOT BE RESPONSIBLE FOR ANY EXCESS WEAR OR MILEAGE.

**3.j. Purchase Option at End of Your Lease Term.** You have an option to purchase the vehicle "as is" at the end of the lease term if the lease is not in default for the sum of the "residual value" shown in paragraph 3.g.iv., a purchase option fee of $495.00(off lease fee) and applicable fees and taxes.

**3.k. Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance and any security interests, if applicable.

Page 1 of 7

© Premier Financial Services, LLC

### 4. ITEMIZATION OF GROSS CAPITALIZED COST

| | |
|---|---|
| a.1. Agreed-upon value of vehicle as equipped at time of signing the lease: | |
| a.2. Agreed-upon value and description of each accessory and item of optional equipment the Lessor agrees to add to the Vehicle after signing the lease: | |
|     i. Not Applicable | +$0.00 |
|     ii. Not Applicable | +$0.00 |
|     iii. Not Applicable | +$0.00 |
| a.3. Total Agreed Upon Value of Vehicle | $162,990.00 |
| b. Taxes | +$0.00 |
| c. Initial Title, License and Registration Fee | +$0.00 |
| d. Service Contract | +$0.00 |
| e. Maintenance Agreement | +$0.00 |
| f. Document Processing Charge (not a governmental fee) | +$0.00 |
| g. Outstanding Prior Credit or Lease Balance | +$0.00 |
| h. Insurance Premium | +$0.00 |
| i. Other (specify) _____ | +$0.00 |
| j. Other (specify) _____ | +$0.00 |
| k. Other (specify) _____ | +$0.00 |
| l. **Gross Capitalized Cost** | =$162,990.00 |

**Estimates based on current sales and use tax rates. †Based on lease running full term.

The consumer lease disclosures we have included in this lease are also made on behalf of the lessor and its assignee, Signature Financial and Leasing LLC. By signing this lease, you are leasing the Vehicle according to all terms of the lease. The Disclosures in Section 3 are also terms of this lease.

### OTHER PROVISIONS
Below memorializes trade-in, turn-in and other individualized agreements

If you are not in default you may elect to terminate this lease at any time prior to the scheduled lease end. If you elect to terminate the lease early, you must pay off the lease and purchase the vehicle by paying the 'Balance' owed as of the date of early termination as set forth in the attached amortization schedule, plus a termination fee. The termination fee will be equal to one monthly lease payment if 12 monthly payments have been received by our lending institution prior to early termination; otherwise the termination fee will be equal to two monthly lease payments. In addition, upon termination you must also pay the Off Lease Fee together with any monthly lease payments and late charges that are unpaid at the time of payoff/purchase and all other amounts that are incurred upon termination of the lease such as official fees and taxes imposed in connection with the lease termination. Upon receipt of the amounts due upon early termination we will transfer title to the vehicle as you direct.

### 5. ESTIMATED OFFICIAL FEES AND TAXES
You understand that the total of official fees, registration, title and taxes we expect you will have to pay during the lease term is $9,818.64. Your taxes and fees obligations are described in paragraph 10.

### 6. INSURANCE
You agree to pay for and maintain during the lease term, and until the vehicle is returned to us, the following insurance on the vehicle, which has the following minimum coverages:

| | |
|---|---|
| a. BODILY INJURY LIABILITY | $100,000/$300,000 |
| b. PROPERTY DAMAGE LIABILITY | $50,000 |
| c. COLLISION WITH MAXIMUM DEDUCTIBLE OF | $2,500 |
| d. COMPREHENSIVE WITH MAXIMUM DEDUCTIBLE (including fire and theft) | $2,500 |

You understand that the policy must provide primary coverage for us and/or another party we specify as an Additional Insured on coverage a. and b. and for us or our assigns as Loss Payee on coverage c. and d. and must also provide all insureds with at least 10 days notice of cancellation or policy revision. You will buy the insurance from an insurance company acceptable to us and will furnish us with whatever written proof of coverage we may require.

INSURANCE COMPANY'S NAME: American Modern
AGENT'S NAME: _____
AGENT'S ADDRESS AND PHONE NUMBER: _____ (1-800-543-2644
INSURANCE VERIFIED BY: _____
POLICY NO. _____ BINDER NO. _____ EXPIRATION: _____ EFFECTIVE: _____

To the extent not prohibited by law, you grant us a limited power of attorney authorizing us to sign or otherwise execute, on your behalf, any loss proceeds check or other insurance disbursement obtained due to damage to the vehicle.

### 7. PARTIAL INSURANCE PROCEEDS DEFICIENCY LIABILITY RELEASE
As noted in paragraph 21, in the event of a casualty loss to the vehicle you will be obligated to pay any difference between the proceeds of your insurance and the total amount of your obligations under this lease. By initialing below, you may agree to purchase our optional insurance proceeds deficiency liability release for $N/A. You realize that as an alternative to purchasing this release you may be able to purchase "Gap Amount" protection from a company authorized to do business in the state where the lease is signed. If you purchase this release, we will partially waive any right to collect a deficiency in insurance proceeds from you in the event of casualty loss of the vehicle which is covered fully by your insurance policy.

You understand that this release does not cover the deductible and any other offsets your insurance company makes under the policy, including for mileage in excess of the then prorated portion of the mileage contemplated in paragraph 3.i., and that you will still be obligated to pay those amounts. You also understand this release will not apply if an event not fully covered by your insurance policy, such as a confiscation, occurs.
a. You choose to purchase our insurance proceeds deficiency liability release and pay the price when you sign the lease.
       **LESSEE INITIALS: Not Applicable**
b. You choose to purchase our insurance proceeds deficiency liability release and have its cash price amortized in the monthly lease payments.
       **LESSEE INITIALS: Not Applicable**

If you have not initialed a. or b., you have chosen not to purchase this release.

### 8. MECHANICAL BREAKDOWN PROTECTION
While you have no obligation to do so, you understand that you may purchase from us a contract under which you will have the right to have a portion of the costs of repair of certain major mechanical breakdowns of the vehicle and some related expenses paid by the contract administrator listed in the contract. The term of this protection would be ___N/A___ years from the date the lease is signed or until the vehicle's odometer shows ___N/A___ miles, whichever happens first. If you have decided to purchase this protection you understand that a copy of the filled-in contract will be sent to you as soon as practicable. You have chosen from the following option:

Page 2 of 7 _____

© Premier Financial Services, LLC

a. You choose to purchase our mechanical breakdown protection contract for the price of $ __N/A__ and pay the price when you sign the lease.

b. You choose to purchase our mechanical breakdown protection contract for the price of $ __N/A__ and have its cash price amortized in the monthly lease payments.

LESSEE INITIALS: Not Applicable

If you have not initialed either a. or b., you have chosen not to purchase our mechanical breakdown protection contract.

## 9. VEHICLE WARRANTIES AND DISCLAIMERS

You understand that unless otherwise indicated below the vehicle is subject to the manufacturer's new car warranty and you have those warranty rights. YOU ACKNOWLEDGE THAT YOU ARE LEASING THE VEHICLE "AS-IS" AND "WITH ALL FAULTS" AND ACCORDINGLY THAT WE MAKE NO EXPRESS WARRANTIES AS TO THE VEHICLE AND SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES, INCLUDING THOSE OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH THE LESSEE(S). IF YOU HAVE PROBLEMS WITH THE VEHICLE, WE WILL NOT BE RESPONSIBLE FOR THE REPAIRS, NOR WILL YOUR LEASE OBLIGATIONS BE AFFECTED.

x The standard written manufacturer's warranty. This warranty is made by the manufacturer and NOT by the Lessor.

X LESSEE INITIALS: JDM
Initials- Jeffrey Douglas

X LESSEE INITIALS: _____
Initials-

## 10. OFFICIAL FEES AND TAXES

You agree to be responsible for the payment when due of all official fees and taxes (other than our net income taxes) imposed by any governmental authority in connection with the vehicle or this lease. We have estimated in paragraph 5 the total of official fees and taxes we expect you will have to pay during the lease term. You understand that the rates and amounts of such fees and taxes may increase during the lease term, and you agree to pay any such increased amounts. You also understand there may be taxes and fees which you pay directly to the taxing authority and excise or similar taxes which are assessed during the lease term but are not due until afterwards and that you are liable for these amounts. We will bill you as required under applicable law for payment of property taxes. You must pay any applicable property taxes, regardless of whether the lease has terminated prior to billing or you have relocated.

## 11. LATE PAYMENT CHARGE AND LATE RETURN

If any monthly lease payment is not received by us within 10 days of its due date, a late charge of 5% of that payment will be imposed, which you agree to pay. You will pay a returned item charge of $25 plus any actual charges assessed by the financial institution for any check you give or other payment method you use which is not honored. In addition, if you do not return the vehicle to us at lease expiration, you will be liable for an additional monthly lease payment for each month or portion of a month you retain the vehicle, and your lease obligations will continue. You realize however, you have no right to retain the vehicle after lease expiration without our consent and that holding over is a default under the lease.

## 12. LIENS AND CLAIMS

You will keep this lease and the vehicle free from any liens, encumbrances or claims which we have not created under paragraph 24. You will hold us harmless and indemnify us for all liability, loss and expense arising from the use, condition or ownership of the vehicle, including any claim made under the vicarious or strict liability doctrine.

## 13. VEHICLE USE AND MAINTENANCE

You agree at your expense to have the vehicle serviced in accordance with the manufacturer's recommendations, to maintain the vehicle in good running order and condition and to have all necessary repairs made. Unless you obtain our written consent beforehand, you will not make any changes to the vehicle which would decrease its economic value or functional utility. Any changes made to the vehicle which cannot be removed without decreasing its economic value or functional utility will become our property when made. If we request, we may inspect the vehicle at any reasonable time. You understand that you are responsible for all operating expenses (for example, gasoline, and oil) incurred in connection with the use of the vehicle. You will not use or permit use of the vehicle: a. For any unlawful purpose or in violation of any law; b. By a person not having a valid driver's license or one who for insurance purposes is deemed an assigned risk or one who does not exercise reasonable care in its operation; c. For the transportation of persons for hire; d. Outside the state where you reside when you sign this lease for a period exceeding 30 days without our prior consent; or e. Outside the United States, without our prior consent.

## 14. STANDARDS FOR WEAR AND USE

The following standards apply for determining unreasonable or excess wear and use of the leased vehicle. You agree that when you return the vehicle to us, you will have properly maintained the vehicle, it will be in good running order and condition and will have, among other things, no less than 5 matching tires of equal quality to the originals (or with emergency "doughnut" spare), with each tire having at least 1/8 inch of remaining tread at its shallowest point, and no chips, scratches, cracks, or other damage or defects in the glass, body, or interior beyond normal wear and tear. If at early termination it costs us more than $75 to put the vehicle in this condition, you promise to pay the difference, unless prohibited by law. At lease end you will pay any amounts in excess of $75 we pay or which would be required based on a good faith estimate of a qualified repair facility or appraiser we select, to put the vehicle in this condition. You also recognize that if the vehicle suffered frame damage or substantial other damage or if its odometer has been inoperable or tampered with, even though the damage or odometer may have been repaired, the value of the vehicle will be substantially less than the value of an identical vehicle which has not had frame damage or suffered substantial other damage or had an inoperable odometer or one which was tampered with. You understand that your obligations include this difference, and that you will be liable for the diminished value in the vehicle (beyond normal wear and tear) that results from such damage, an accident, or any other event or circumstance.

## 15. OPTION TO PURCHASE LEASED VEHICLE PRIOR TO END OF LEASE

You have the option to purchase the leased vehicle prior to the end of the lease. See "Other Provisions" between Sections 4 and 5 of this agreement for terms of purchase prior to the end of the lease. You realize that this is a lease, and except for your right to possess and use the vehicle while you keep your promises under this lease, you have no ownership interest in the vehicle, its equipment, accessories or replacement parts unless you exercise the purchase option. Whether you purchase the vehicle during or at the end of the lease, the purchase will be on an "AS IS, WHERE IS, AND WITH ALL FAULTS" basis.

## ENDING THE LEASE

### 16. LEASE BALANCE

In paragraph 19 the term "Lease Balance" is used to describe a component of respectively the purchase option price of the vehicle prior to the lease expiration and your potential liability in the event of early termination where you do not purchase the vehicle. At any time, the Lease Balance equals the adjusted capitalized cost shown in paragraph 3.g.iii. minus the depreciation portions of previously due monthly lease payments. The depreciation portion of a monthly lease payment equals the base monthly payment shown in paragraph 3.g.ix. minus the "lease charge" portion of the payments. The lease charge portion is calculated by multiplying the difference between (a) the adjusted capitalized cost and (b) the sum of one base monthly payment and the depreciation portions of the previously due monthly leases payments by (c) the constant rate which over the term of the lease reduces the adjusted capitalized cost to the residual value shown in paragraphs 3.g.iv. by subtracting the depreciation portions of all base monthly payments. These calculations assume a 360-day year of 12 months of 30 days each and that each payment is made in the scheduled amount and on the exact due date. These calculations follow the rules for journal entries for lessors as to "Direct Financing Leases" set forth in the Financial Accounting Standards Board's Standard No. 13. Additional information regarding calculation of the Lease Balance appears in the "Other Provisions" box between paragraphs 4 and 5. Pursuant to the "Other Provisions" and paragraph 19, if the lease is terminated early, you are obligated to pay a termination fee and an off lease fee, in addition to other amounts set forth in those sections.

### 17. VEHICLE RETURN

You understand that upon lease termination you must return the vehicle to the place we specify. You also understand that you must pay us your termination liability as calculated in paragraph 19 or 20 below, whichever is applicable.

### 18. VEHICLE VALUATION TERMINATION

Your early or end of term termination liability may be affected by the realized value of the vehicle. The realized value may be determined in one of the following ways: JDM

Page 3 of 7

© Premier Financial Services, LLC

a. Within 10 days after return of the vehicle, you and we may enter into a written agreement as to the vehicle's value, or should you request it, you may obtain a professional appraisal of the wholesale value of the vehicle which could be realized upon sale made by a qualified party acceptable to us as well as to you. The expense for any such appraisal will be yours.

b. If the realized value is not determined as above within 10 days after return of the vehicle, we will attempt to obtain 3 bids to purchase the vehicle at wholesale for cash, if allowed by law, or to dispose of the vehicle in some other commercially reasonable manner. If we use a bid procedure, even though we may decide to not to sell the vehicle to any bidder, the highest bona fide bid received (which is supported by whatever proof of ability to pay we may require) will be considered the realized value of the vehicle. You understand that the realized value amount will be exclusive of any official fees and taxes imposed upon vehicle disposition.

### 19. EARLY TERMINATION LIABILITY

At any time after you sign this lease, you may terminate this lease. At any time after you sign this lease, we may terminate it if conditions as stated in paragraph 21 occur or this lease is in default as stated in paragraph 22.

You agree that, except as provided in paragraphs 7, 15, and 21, your payment liability upon early termination, if you surrender the vehicle, will be the sum of: (a.) a disposition fee of $495, plus; (b.) any monthly lease payments already due us which are unpaid and any other amounts arising from your failure to keep your promises under this lease; plus; (c.) the amount, if any, by which the Lease Balance exceeds the realized value; plus; (d.) any official fees and taxes imposed in connection with the lease termination (for example, sales/use taxes due on a deficiency balance under c.). In addition, you must pay termination fees as set forth in the "Other Provisions" box between paragraphs 4 and 5. The "Other Provisions" box also describes, along with paragraph 16, how the Lease Balance can be calculated for the purpose of establishing liability under (c.) of this paragraph 19, above.

### 20. END OF LEASE TERMINATION LIABILITY

You agree that your payment liability at the end of the lease term will be the sum of:
(a.) a disposition fee of $495 (off lease fee); plus; (b.) any monthly lease payments due us which are unpaid and any other amount arising from your failure to keep your promises under this lease; plus; (c.) if residual value shown in paragraph 3.g.iv. exceeds the realized value, the difference between the residual value and the realized value; plus; (d.) the lesser of the excess mileage charge contemplated in paragraph 3.i. or the amount of deficiency described in (c) which is uncollectible because of the "3 payment rule" described below; plus; (e.) any official fees and taxes imposed in connection with the lease termination (for example, taxes due on a deficiency balance under (c) or (d)).

There is a rebuttable presumption that if the deficiency under (c.) exceeds three monthly lease payments the residual value is unreasonable and was not established in good faith. As a result, your liability under (c.) will be limited to the sum of 3 monthly lease payments:
• Except for any difference which is due to unreasonable wear or use, or
• Unless you agree after the end of the lease term to make a higher payment; or
• Unless we prove in a lawsuit for a higher payment, that the residual value was a reasonable estimation of the vehicle's likely end-of-term wholesale value at the time of lease signing and was made in good faith. Whether or not we prove that, we will pay your attorney's fees to the extent the difference is not due to unreasonable wear or use or;
• Unless you have entered in this lease primarily for agricultural, business or commercial purposes or you are a government agency or an organization.
• Your total contractual obligation under this lease (the total of payments in Section 3d, and not including residual value amounts, purchase-option prices or amounts collected by us but paid to a third party, such as taxes, license and registration fees) exceeds $25,000.

Notwithstanding anything in this Section 20 to the contrary, if you are an individual leasing the vehicle primarily for personal, family or household purposes, the deficiency under (c) exceeds three monthly lease payments, your liability under (c) will be limited to the sum of 3 monthly lease payments if this lease is signed in the states of California, Delaware, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, or North Dakota.

### 21. DAMAGE, LOSS OR POTENTIAL LOSS OF VEHICLE

You agree to be responsible for the risk of loss, damage or destruction of the vehicle during the lease term and until you return the vehicle to us. If the vehicle is damaged or destroyed in an accident or other occurrence or confiscated by any government authority or is stolen or is abandoned or is subject to undue peril, you will notify us of such occurrence or condition as soon as possible. If the vehicle is damaged and is in a condition which we believe is beyond reasonable repair, the lease will be terminated immediately. With respect to any other occurrence or condition included above, we reserve the right to terminate the lease immediately. If the lease is terminated, your termination liability will, unless otherwise provided in paragraph 7, be determined on the basis of an early termination. While any loss proceeds we receive from the insurance you provide will be credited to your termination liability, you also acknowledge your liability for any difference between the termination liability figure and the loss proceeds amount.

### 22. DEFAULT

If any information in your credit application or that of a guarantor of this lease is false or misleading or you fail either to make a monthly lease payment when due or otherwise to keep your promises under this lease or any other agreement you have with us or if you or a guarantor becomes insolvent or dies, we can treat this lease as being in default. In the event of default, we may do any one or more of the following without giving you advance notice: (a) take any reasonable measures designed either to correct the default or to save us from loss, such as purchasing insurance to protect our interest if you fail to fulfill your obligations under Section 6 or paying any vehicle registration fees you have not paid directly as may be contemplated in Section 10, in which case you will pay us upon demand for the costs and expenses incurred; (b) terminate the lease and your rights to possess and use the vehicle; (c) take possession of the vehicle by any method or manner permitted by law; (d) determine your termination liability on an early termination basis which you agree to pay upon our demand; (e) recover from you interest at the rate of 18% per annum or at such lesser rate as may be provided for under applicable law on all expenses we incur and on all obligations you owe us after termination; and (f) pursue any other remedy permitted by law. You also agree to pay upon our demand all collections and legal costs, including reasonable attorneys' fees and court costs, we incur, to the extent not prohibited by law.

### 23. MORE THAN ONE LESSEE

If more than one lessee signs this lease, all lessees will be jointly and severally liable. You agree that we can waive or delay the enforcement of our rights as to one lessee without affecting our rights as to any other lessees. You also agree that we can release any lessee from his or her obligations without releasing any other lessees from their obligations.

### 24. SECURITY INTEREST

We reserve a security interest in the vehicle described herein to secure performance of your obligations under this lease. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on this lease. It is your responsibility to keep the listed address current. Assuming you have no prior felony convictions, the maximum penalty for failure to return a motor vehicle subject to a security interest is 1 year in prison and a $150,000 fine. You acknowledge that the vehicle may be subject to a security interest. NOTICE: BY GIVING US A SECURITY INTEREST IN THE PROPERTY DESCRIBED, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM THE PROPERTY EXEMPT FROM LEGAL PROCESS.

### 25. GENERAL PROVISIONS

You understand that:
a. Our waiver or delay in requiring you to keep your promises or in enforcing our rights will not affect our ability to require you to keep your promises or to enforce our rights afterwards;
b. We have no obligation to provide a replacement vehicle for any reason;
c. Notices under this lease must be in writing, addressed to the appropriate party at the address shown above, and must be mailed by U.S. Mail, first class postage prepaid, and each party shall promptly notify the other of a change in address;
d. If this lease is made primarily for personal, family, or household purposes as identified below, the lease will be governed by federal law and the law of the state where it is signed. Any changes to this lease must be in writing and signed by the party to be bound;
e. YOU HAVE NO RIGHT TO ASSIGN AN INTEREST IN THE LEASE OR THE VEHICLE OR TO SUBLET OR LEND THE VEHICLE. You acknowledge that we may assign an interest in this lease or the vehicle and that if you receive notice of the assignment, you will acknowledge the notice and pay any assigned amounts specified in the notice as we have directed. You agree that no assignee is responsible for the performance of any of our duties under this lease unless the assignee expressly assumes the duties;
f. You are responsible for ensuring the Vehicle is registered and inspected as and when required by applicable law;
g. Any security deposit shown in paragraph 3.e.v. will not be considered as rent, will not bear interest unless provided by applicable law and will not release you from any of your obligations to us, and we may at any time apply the deposit to the payment of your obligation to us. You will not be entitled to any increase

DocuSign Envelope ID: 0982DF06-8270-47D4-8B94-45DB3656ECBB

to or profit on the security deposit. We may mingle the security deposit with any of our other funds, unless prohibited by law. We have no fiduciary obligation to you regarding the security deposit. You understand that we will return any remaining balance of the deposit after the designated custodial liability under this lease;

h. We will have no liability for a failure or delay in delivering the vehicle or any other failure to perform our obligations related to the lease if caused by circumstances beyond our control. In no event will we be liable for consequential damages. Also, your obligations cease on notice to you if your credit has not been approved within 10 days. In that case, you will immediately return the vehicle to us at the place of delivery and will be liable for the cost of repair of any damage to the vehicle prior to the return;

i. You will indemnify and hold harmless Lessor, its assignee and agents from any loss or damage to the Vehicle and its contents and from all other claims, losses, injuries, expenses and costs, related to the use, maintenance or condition of the vehicle. You will promptly pay all fines and tickets imposed on the Vehicle or its driver;

j. If any term or provision of this lease shall, to any extent, be held invalid or unenforceable the remainder of this lease shall not be affected; and

k. You represent that your driver's license has not been revoked or suspended at the time of the execution of this Lease. Further, you will not allow anyone to drive this vehicle who is not lawfully authorized.

l. Any references in this agreement to "consumer" or "consumer lease" do not apply if the lease is made for commercial, business, or agricultural purposes.

m. You give us power of attorney to execute in your name any proofs of insurance claims or losses regarding the Vehicle and to endorse your name on any related insurance settlement draft or check.

n. **Electronic Records and Signatures.** You agree that we may use electronic records and electronic signatures to document this Lease Agreement and all subsequent documents and communications related to this lease. In such case, you agree to use electronic records and signatures. Your electronic signatures on electronic records will have the same effect as signatures on a paper document. They are legally binding and fully enforceable under the law. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies.

## 26. ARBITRATION AGREEMENT

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your lease application, lease or condition of the vehicle, your lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign your lease agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If the lease agreement has been terminated due to your default, notwithstanding anything to the contrary in this Arbitration Agreement, you must elect to arbitrate a claim or dispute within 30 days after termination of the lease agreement. We may, but are not required to, arbitrate a claim you make or dispute you raise more than 30 days after termination of the lease agreement due to your default. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. Your may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), or the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which your lease agreement was entered into, unless the arbitrator determines that location to be inappropriate. In the event the arbitrator determines that conducting the arbitration in the federal district in which your lease agreement was entered into is inappropriate, the arbitration will be conducted in the federal district agreed upon by you and us. If either party elects arbitration but fails to appear at any arbitration hearing or arbitration proceeding, that party agrees that the arbitrator shall enter a judgment by default against such party. You agree to pay your filing, administration, service or case management fee, arbitrator's fee, hearing fee and all other fees and charges, including your attorneys' fees (unless applicable law requires us to pay your attorneys' fees). If applicable law prohibits imposing these fees upon you, the arbitrator shall direct that we pay them. The arbitrator may also require that we pay any such fees in whole or in part if such payment by us is necessary to assure that this arbitration provision is enforceable. If the chosen arbitration organization's rules conflict with this Arbitration Agreement, then this Arbitration Agreement controls. The arbitrator's award shall be final and binding on all parties, except that if the arbitrator's award for a party is $0 or against a party exceeds $200,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party is responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act, and not by any state arbitration law. You and we retain any rights to self-help remedies including, but not limited to, repossession by any method or manner not prohibited by applicable law. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Agreement shall survive any termination, payoff or transfer of your lease. Paragraph 25k does not apply to this Arbitration Agreement; instead, the following two sentences apply. If any part of this Arbitration Agreement, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration clause shall be unenforceable.

Page 5 of 7 [signature: JDM]

© Premier Financial Services, LLC

DocuSign Envelope ID: 0982DF06-8270-47D4-8B94-45DB3656ECBB

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

TERMINAL RENTAL ADJUSTMENT CLAUSE (Internal Revenue Code § 7701 (h) STATEMENT FOR BUSINESS/COMMERCIAL LEASES)

You hereby certify under penalty of perjury that (a) you intend more than 50% of the use of the vehicle covered by this lease to be in your trade or business; and (b) you have been advised that you will not be treated as the owner of the vehicle for federal income tax purposes.

X LESSEE INITIALS: JDM  
Initials- Jeffrey Douglas

X LESSEE INITIALS:  
Initials-

CONSUMER OR COMMERCIAL LEASE: You intend to use the vehicle (initial applicable box only):

Primarily for personal, family or household purposes

OR

X LESSEE INITIALS: JDM  
Initials- Jeffrey Douglas

X LESSEE INITIALS:  
Initials-

Primarily for agricultural, business or commercial purposes

X LESSEE INITIALS: N/A

X LESSEE INITIALS: N/A

You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

LESSEE: Jeffrey Douglas Moyer  
By: Jeffrey Douglas Moyer  
Signature - Jeffrey Douglas Moyer

GUARANTOR:  
By:  
Signature -

NOTICE TO THE LESSEE  
(1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled-in copy of this lease, (3) Warning – Unless a charge is included in this lease for public liability or property damage insurance, payment for that coverage is not provided by this lease.

BY SIGNING THIS LEASE, YOU AGREE TO ITS TERMS, INCLUDING THE ARBITRATION PROVISION, AND ACKNOWLEDGE THAT YOU HAVE READ THIS LEASE AND RECEIVED A COMPLETELY FILLED IN COPY BEFORE YOU SIGNED BELOW, ON THE DATE SET FORTH HEREIN.

LESSOR: Premier Financial Services, LLC  
By:  
Name:  
Title:

LESSEE: Jeffrey Douglas Moyer  
By: Jeffrey Douglas Moyer  
Signature - Jeffrey Douglas Moyer

Name of Guarantor: Jeffrey Douglas Moyer

You agree to pay the lease obligation between the Lessor and Lessee named at the top of page 1 of this Open End Motor Vehicle Lease Agreement (the "lease"), although you may not personally receive any goods. You may have to pay this obligation even if the person who receives the goods is able to pay. This notice is not the contract that makes you responsible for the obligation. Read the lease (including the preceding five (5) pages) and the "Guaranty" section below for the exact terms of your obligation.

GUARANTY: To induce Lessor's execution of the lease and any Rider thereto, and in consideration of same, Guarantor absolutely guarantees full payment and due performance of Lessee's obligations under the lease and any Rider thereto: Guarantor consents to any modification or extension of the lease and any Rider thereto, waives notice of all modifications, extensions and defaults thereof, and acknowledges that the provisions of the lease are made a part hereof and are incorporated herein by reference.

GUARANTOR X: Jeffrey Douglas Moyer  
Signature - Jeffrey Douglas Moyer

GUARANTOR: X  
Signature -

Jeffrey Douglas Moyer  
Address:  
3160 E. Wildhorse Ct.  
Gilbert, AZ 85297  
480-704-3860

Address:

DELIVERY RECEIPT  
You acknowledge that you have received and examined the vehicle described at the beginning of this lease, that the vehicle is equipped as described and in good operating order and condition and that you accept the vehicle for all purposes of the lease.

Date: 3/17/2017

Odometer Reading: 25719

LESSEE: Jeffrey Douglas Moyer  
By: Jeffrey Douglas Moyer  
Signature - Jeffrey Douglas Moyer

© Premier Financial Services, LLC

DocuSign Envelope ID: 0982DF06-8270-47D4-8B94-45DB3656ECBB

THIS IS A COPY
This is a copy view of the Authorative Copy held by the designated custodian

**Early Termination Amortization Schedule** (as noted in 4. Other Provisions)

Terms:
- Purchase Price: $162,990.00
- Down Payment: $0.00
- Financed Amount: $162,990.00

| # | Monthly Payment Due Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 03/16/2017 | 0.00 | 0.00 | 0.00 | 162990.00 |
| 1 | 04/15/2017 | 2098.00 | 866.37 | 1231.63 | 161758.37 |
| 2 | 05/15/2017 | 2098.00 | 859.83 | 1238.17 | 160520.20 |
| 3 | 06/15/2017 | 2098.00 | 853.25 | 1244.75 | 159275.45 |
| 4 | 07/15/2017 | 2098.00 | 846.63 | 1251.37 | 158024.08 |
| 5 | 08/15/2017 | 2098.00 | 839.98 | 1258.02 | 156766.06 |
| 6 | 09/15/2017 | 2098.00 | 833.29 | 1264.71 | 155501.35 |
| 7 | 10/15/2017 | 2098.00 | 826.57 | 1271.43 | 154229.92 |
| 8 | 11/15/2017 | 2098.00 | 819.81 | 1278.19 | 152951.73 |
| 9 | 12/15/2017 | 2098.00 | 813.02 | 1284.98 | 151666.75 |
| 2017 Totals | | 18882.00 | 7558.75 | 11323.25 | |
| 10 | 01/15/2018 | 2098.00 | 806.19 | 1291.81 | 150374.94 |
| 11 | 02/15/2018 | 2098.00 | 799.32 | 1298.68 | 149076.26 |
| 12 | 03/15/2018 | 2098.00 | 792.42 | 1305.58 | 147770.68 |
| 13 | 04/15/2018 | 2098.00 | 785.48 | 1312.52 | 146458.16 |
| 14 | 05/15/2018 | 2098.00 | 778.50 | 1319.50 | 145138.66 |
| 15 | 06/15/2018 | 2098.00 | 771.49 | 1326.51 | 143812.15 |
| 16 | 07/15/2018 | 2098.00 | 764.43 | 1333.57 | 142478.58 |
| 17 | 08/15/2018 | 2098.00 | 757.35 | 1340.65 | 141137.93 |
| 18 | 09/15/2018 | 2098.00 | 750.22 | 1347.78 | 139790.15 |
| 19 | 10/15/2018 | 2098.00 | 743.06 | 1354.94 | 138435.21 |
| 20 | 11/15/2018 | 2098.00 | 735.85 | 1362.15 | 137073.06 |
| 21 | 12/15/2018 | 2098.00 | 728.61 | 1369.39 | 135703.67 |
| 2018 Totals | | 25176.00 | 9212.92 | 15963.08 | |
| 22 | 01/15/2019 | 2098.00 | 721.33 | 1376.67 | 134327.00 |
| 23 | 02/15/2019 | 2098.00 | 714.02 | 1383.98 | 132943.02 |
| 24 | 03/15/2019 | 2098.00 | 706.66 | 1391.34 | 131551.68 |
| 25 | 04/15/2019 | 2098.00 | 699.26 | 1398.74 | 130152.94 |
| 26 | 05/15/2019 | 2098.00 | 691.83 | 1406.17 | 128746.77 |
| 27 | 06/15/2019 | 2098.00 | 684.35 | 1413.65 | 127333.12 |
| 28 | 07/15/2019 | 2098.00 | 676.84 | 1421.16 | 125911.96 |
| 29 | 08/15/2019 | 2098.00 | 669.29 | 1428.71 | 124483.25 |
| 30 | 09/15/2019 | 2098.00 | 661.69 | 1436.31 | 123046.94 |
| 31 | 10/15/2019 | 2098.00 | 654.06 | 1443.94 | 121603.00 |
| 32 | 11/15/2019 | 2098.00 | 646.38 | 1451.62 | 120151.38 |
| 33 | 12/15/2019 | 2098.00 | 638.67 | 1459.33 | 118692.05 |
| 2019 Totals | | 25176.00 | 8164.38 | 17011.62 | |
| 34 | 01/15/2020 | 2098.00 | 630.91 | 1467.09 | 117224.96 |
| 35 | 02/15/2020 | 2098.00 | 623.11 | 1474.89 | 115750.07 |
| 36 | 03/15/2020 | 2098.00 | 615.27 | 1482.73 | 114267.34 |
| 37 | 04/15/2020 | 2098.00 | 607.39 | 1490.61 | 112776.73 |
| 38 | 05/15/2020 | 2098.00 | 599.47 | 1498.53 | 111278.20 |
| 39 | 06/15/2020 | 2098.00 | 591.50 | 1506.50 | 109771.70 |
| 40 | 07/15/2020 | 2098.00 | 583.49 | 1514.51 | 108257.19 |
| 41 | 08/15/2020 | 2098.00 | 575.44 | 1522.56 | 106734.63 |
| 42 | 09/15/2020 | 2098.00 | 567.35 | 1530.65 | 105203.98 |
| 43 | 10/15/2020 | 2098.00 | 559.21 | 1538.79 | 103665.19 |
| 44 | 11/15/2020 | 2098.00 | 551.03 | 1546.97 | 102118.22 |
| 45 | 12/15/2020 | 2098.00 | 542.81 | 1555.19 | 100563.03 |
| 2020 Totals | | 25176.00 | 7046.98 | 18129.02 | |
| 46 | 01/15/2021 | 2098.00 | 534.54 | 1563.46 | 98999.57 |
| 47 | 02/15/2021 | 2098.00 | 526.23 | 1571.77 | 97427.80 |
| 48 | 03/15/2021 | 2098.00 | 517.88 | 1580.12 | 95847.68 |
| 49 | 04/15/2021 | 2098.00 | 509.48 | 1588.52 | 94259.16 |
| 50 | 05/15/2021 | 2098.00 | 501.03 | 1596.97 | 92662.19 |
| 51 | 06/15/2021 | 2098.00 | 492.55 | 1605.45 | 91056.74 |
| 52 | 07/15/2021 | 2098.00 | 484.01 | 1613.99 | 89442.75 |
| 53 | 08/15/2021 | 2098.00 | 475.43 | 1622.57 | 87820.18 |
| 54 | 09/15/2021 | 2098.00 | 466.81 | 1631.19 | 86188.99 |
| 55 | 10/15/2021 | 2098.00 | 458.14 | 1639.86 | 84549.13 |
| 56 | 11/15/2021 | 2098.00 | 449.42 | 1648.58 | 82900.55 |
| 57 | 12/15/2021 | 2098.00 | 440.66 | 1657.34 | 81243.21 |
| 2021 Totals | | 25176.00 | 5856.18 | 19319.82 | |
| 58 | 01/15/2022 | 2098.00 | 431.85 | 1666.15 | 79577.06 |
| 59 | 02/15/2022 | 80000.00 | 422.94 | 79577.06 | 0.00 |
| 2022 Totals | | 82098.00 | 854.79 | 81243.21 | |
| Grand Totals | | 201684.00 | 38694.00 | 162990.00 | |

Page 7 of 7 ─DS─ JDM

© Premier Financial Services, LLC

# EXHIBIT 3



**Premier Financial Services**
*Vintage and Exotic Motorcar Leasing*

47 Sherman Hill Road
Woodbury, CT 06798

Tel 203 267.7700
Fax 203 267.7773
premierfinancialservices.com

## Deficiency Balance Explanation

**Account Number:** ▇▇▇▇▇▇
**Lessee Name:** Jeffrey Douglas Moyer

| | | | |
|---|---|---:|---|
| Total Amount Financed | $ | 162,990.00 | Per 3. (gi) Gross Capitalized (Cost) |
| Interest over life of lease | $ | 38,694.00 | Per Amortization Schedule (attached) |
| First Monthly Payment | $ | 4,196.00 | Per 3. (gix) "Frist Monthly Payment" |
| **DUE AT INCEPTION** | **$** | **205,880.00** | **Full contract balance due Premier** |
| First Monthly Payment | $ | (4,196.00) | Paid at Inception |
| 3 Payments made by Lessee | $ | (6,294.00) | |
| Less Proceeds from Sale of Vehicle | $ | (140,000.00) | |
| (+) Late Charges | $ | 314.70 | |
| (+) Off Lease Fee | $ | 495.00 | |
| **Total Due from Lessee** | **$** | **56,199.70** | |

Premier Financial Services LLC